## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| IN RE:                                                    ) | CHAPTER 7 |
|                                                              ) | |
| Kenneth Washington                              ) | CASE NO. 20-72869-wlh |
|                                                              ) | |
| ------------------------------- Debtor ------- ) | |

| | |
|---|---|
| Select Portfolio Servicing, Inc., as servicer for U.S.      ) | |
| Bank National Association, not in its individual            ) | |
| capacity but solely as indenture trustee, for the holders   ) | |
| of the CIM Trust 2020-R3, Mortgage-Backed Notes,            ) | |
| Series 2020-R3                                              ) | |
|                                                              ) | |
|                              Movant,                         ) | |
| v.                                                           ) | CONTESTED MATTER |
|                                                              ) | |
| Kenneth Washington, Debtor                                  ) | |
| S. Gregory Hays, Trustee                                    ) | |
|                              Respondents.                    ) | |

## <u>NOTICE OF HEARING</u>

Select Portfolio Servicing, Inc., as servicer for U.S. Bank National Association, not in its individual capacity but solely as indenture trustee, for the holders of the CIM Trust 2020-R3, Mortgage-Backed Notes, Series 2020-R3, ("Movant") filed a Motion for Relief from Stay, seeking relief from the automatic stay on real estate located at 3388 BINGHURST RD., SUWANEE, Georgia 30024.  <u>**Hearing will be held on this motion in Courtroom 1403, United States Courthouse, 75 Ted Turner Dr., SW, Atlanta, GA 30303 at 9:30 AM, on February 18, 2021.**</u>

*Given the current public health crisis, hearings may be telephonic only.  Please check the "Important Information Regarding Court Operations During COVID-19 Outbreak" tab at the top of the GANB Website prior to the hearing for instructions on whether to appear in person or by phone.*

Your rights may be affected by the court's ruling on these pleadings. You should read these pleadings carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.) If you do not want the court to grant the relief sought in these pleadings or if you want the court to consider your views, then you and/or your attorney must attend the hearing. You may also file a written response to the pleading with the Clerk at the address stated below, but you are not required to do so. If you file a written response, you must attach a certificate stating when, how and on whom (including addresses) you served the response. Mail or deliver your response so that it is received by the Clerk at least three business days before the hearing. The address of the Clerk's Office is: Clerk, U. S. Bankruptcy Court, 75 Ted Turner Drive, SW, Atlanta, GA 30303. You must also mail a copy of your response to the undersigned at the address stated below.

Movant waives the provisions of § 362(e)(2). Movant consents to the automatic stay remaining in effect until the Court orders otherwise.

Dated: February 3, 2021

/s/ **Richard B. Maner**
Richard B. Maner
Counsel for Movant
GA Bar No. 486588
180 Interstate N Parkway, Suite 200
Atlanta, GA 30339
Phone: (404) 252-6385; Fax: (404) 252-6394
*rmaner@rbmlegal.com*

## CERTIFICATE OF SERVICE

I, Richard B. Maner, certify that I am over the age of 18 and that on February 3, 2021, I served a copy of Movant's **MOTION FOR RELIEF FROM STAY** and **NOTICE OF HEARING** electronically.  Those not served electronically have been served by depositing same in the United States Mail in a properly addressed envelope to each with adequate postage prepaid on the following persons or entities at the addresses stated:

Kenneth Washington
3388 Binghurst Rd
Suwanee, GA 30024

Jameson Kelley Killorin
Jones & Walden, LLC
699 Piedmont Avenue NE
Atlanta, GA 30308

S. Gregory Hays, Chapter 7 Trustee
Hays Financial Consulting, LLC
Suite 555
2964 Peachtree Road
Atlanta, GA 30305

This the 3rd day of February, 2021

/s/ **Richard B. Maner**
Richard B. Maner
Counsel for Movant
GA Bar No. 486588
RICHARD B. MANER, P.C.
180 Interstate N Parkway, Suite 200
Atlanta, GA  30339
Phone: (404) 252-6385; Fax: (404) 252-6394
*rmaner@rbmlegal.com*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| IN RE: | ) CHAPTER 7 |
| | ) |
| Kenneth Washington | ) CASE NO. 20-72869-wlh |
| | ) |
| Debtor | ) |
| Select Portfolio Servicing, Inc., as servicer for U.S. | ) |
| Bank National Association, not in its individual | ) |
| capacity but solely as indenture trustee, for the holders | ) |
| of the CIM Trust 2020-R3, Mortgage-Backed Notes, | ) |
| Series 2020-R3 | ) |
| Movant, | ) |
| v. | ) CONTESTED MATTER |
| | ) |
| Kenneth Washington, Debtor | ) |
| S. Gregory Hays, Trustee | ) |
| Respondents. | ) |

## MOTION FOR RELIEF FROM STAY

COMES NOW, Select Portfolio Servicing, Inc., as servicer for U.S. Bank National Association, not in its individual capacity but solely as indenture trustee, for the holders of the CIM Trust 2020-R3, Mortgage-Backed Notes, Series 2020-R3 for itself, its successors and assigns, ("Movant") and moves this Court for relief from the automatic stay pursuant to 11 U.S.C. § 362. In support thereof, Movant shows the Court as follows:

1.

Select Portfolio Servicing, Inc. currently services the loan for U.S. Bank National Association, not in its individual capacity but solely as indenture trustee, for the holders of the CIM Trust 2020-R3, Mortgage-Backed Notes, Series 2020-R3, which is paid to the order of is secured by a Deed to Secure Debt/Security Deed and Promissory Note with respect to Debtor's real property located at 3388 BINGHURST RD., SUWANEE Georgia 30024, copies of which are attached hereto as Exhibit "A".

2.

In the event the automatic stay in this case is modified, the case dismisses, and/or Debtor(s) obtains a discharge and a foreclosure action is commenced on the mortgaged property, the foreclosure will be conducted in the name of U.S. Bank National Association, not in its individual capacity but solely as indenture trustee, for the holders of the CIM Trust 2020-R3, Mortgage-Backed Notes, Series 2020-R3, which is the entity that has the right to foreclose by virtue of being owner and holder of the Note. The Note is either made payable to U.S. Bank National Association, not in its individual capacity but solely as indenture trustee, for the holders of the CIM Trust 2020-R3, Mortgage-Backed Notes, Series 2020-R3, or has been duly endorsed.

3.

Debtor filed for relief under Chapter 7 of the U.S. Bankruptcy Code on 12/22/2020.

4.

As of 1/28/2021, the Debtor has defaulted in payments due for 12/20/2020 and 1/20/2021. The unpaid principal balance was $752,585.40, and the approximate payoff was $761,105.48. A copy of the Financial Breakdown Summary is attached hereto as Exhibit "B".

5.

Because Debtor has demonstrated a continuing default and the clear inability to make payments required by the loan documents and the provisions of the bankruptcy code, Movant is not adequately protected. For the above and foregoing reasons, Movant asserts cause exists sufficient to waive the requirements of Bankruptcy Rule 4001(a)(3), therefore allowing an Order to be effective upon entry.

6.

Movant requests upon entry of an Order granting relief from stay, that Rule 3002.1 of the Federal Rules of Bankruptcy Procedure no longer apply as the claim is not provided for under 11 U.S.C. Section 1322(b)(5).

7.

Movant requests that it be permitted to contact Debtor or Debtor's Counsel, as appropriate, through its agents, servicers, and representatives for the purpose of engaging in discussions and consideration for possible loss mitigation options, solutions, and resolutions, as appropriate with regard to the underlying Security Deed and Note, including, but not limited to loan modification or other loss mitigation alternatives.

WHEREFORE, the Movant prays for an Order relieving it from the automatic stay of 11 U.S.C. § 362 authorizing Movant to proceed with the exercise of the private power of sale and foreclosure under its Security Deed; any dispossessory proceedings, if necessary, all in accordance with and pursuant to appropriate state statutes; directing that Rule 3002.1 no longer apply. Movant further prays that the provisions of Bankruptcy Rule 4001(a)(3) be waived so that such Order be effective upon entry.

This 3rd day of February, 2021.

<div style="margin-left:40%">

Respectfully Submitted,

**/s/ Richard B. Maner**
Richard B. Maner, GA Bar No. 486588
Counsel for Movant
180 Interstate N Parkway, Suite 200
Atlanta, GA 30339
Phone: (404) 252-6385; Fax: (404) 252-6394
*rmaner@rbmlegal.com*

</div>

MERS MIN:

Washington, Kenneth

# ADJUSTABLE RATE NOTE

**(LIBOR Six-Month Index (As Published in *The Wall Street Journal*)-Rate Caps Accrued Interest Only for Fixed Rate Period)**

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

| January 12, 2006 | Suwanee | GA |
|---|---|---|
| [Date] | [City] | [State] |

3388 Binghurst Rd
Suwanee, GA 30024
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S.$ 728,000.00 (this amount is called "Principal"), plus interest, to the order of Lender. Lender is Quicken Loans Inc.
a          Michigan          corporation. I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest for the first 120 months at a yearly rate of 6.250 %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

**(A) Time and Place of Payments**

I will pay a monthly payment of accrued interest only for the first 120 months of this loan by making a payment each month. Beginning with the 121 month, I will pay principal and interest by making a payment every month thereafter.

I will make my monthly payments on the 1st day of each month beginning on March 1, 2006

I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on February 1, 2036 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at P.O. Box 530483, Livonia, MI 48153-0483 or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S.$3,791.67 . This amount may change.

**(C) Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A) Change Dates**

The interest rate I will pay may change on the 1st day of February 2013 , and on that day every 6th month thereafter. Each date on which my interest rate could change is called a "Change Date."

Page 1 of 4



**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding Two and One-Quarter percentage points ( 2.250 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 11.250 % or less than 2.250 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than One and No-Thousandths percentage point(s) ( 1.000 %) from the rate of interest I have been paying for the preceding Six months. My interest rate will never be greater than 11.250 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. If the partial Prepayment is made during the period when my monthly payments consist only of interest, the amount of the monthly payment will decrease for the remainder of the term when my payments consist only of interest. If the partial Prepayment is made during the period when my payments consist of principal and interest, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.



## 7. BORROWERS FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of Fifteen calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000% of my overdue payment of interest during the first 120 months and of the principal and interest thereafter. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3 (A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.  Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.**

_____ 01/12/2006
Kenneth Washington                Borrower

_____            _____
                   Borrower                                    Borrower

_____            _____
                   Borrower                                    Borrower

_____            _____
                   Borrower                                    Borrower

Page 4 of 4

reqID:          '81        **Trailing Document Header**        **Date**        03/02/2017

## CL-ALLONGE-SOLD

**Loan Number:**                    **Borrower Name**        WASHINGTON, KENNETH

**Borrower Address**   3388 BINGHURST RD SUWANEE, GA 30024

**Document SAK Number**

Cus_Doc_type

**Return To:**

**Doc Description**    **Return to Requestor**

**Image Tracking Batch:**                    **ITEM:**

**Doc Count**                        *DEAL_ID:*

**Comment**

**Exception SAK Number**

*SIGNOR:*

BV#  ⌃⌃⌃    7

## ALLONGE TO NOTE

FOR PURPOSES OF FURTHER ENDORSEMENT OF THE NOTE REFERRED TO BE

BORROWER:    WASHINGTON, KENNETH

OBAL:    $728,000.00

ODATE:    01/18/2006

ADDRESS:    3388 BINGHURST RD SUWANEE, GA 30024

PAY TO THE ORDER OF:

BOF II 2011-2NPL, LLC

WITHOUT RECOURSE:

BAYVIEW LOAN SERVICING, LLC

BY:_____

NAME:    LEONARDO NUNEZ

TITLE:    Assistant Vice President

46073
00335

BK46073PG0335

Return To:
Sharyn Labby
Quicken Loans Inc.
20555 Victor Parkway
Livonia, MI 48152

**ATTN: RECORDING DEPT.
TITLE SOURCE INC
1450 W LONG LK STE 400
TROY MI 48098**

FILED & RECORDED
CLERK SUPERIOR COURT
GWINNETT COUNTY, GA.

2006 JAN 20 PM 2:00

TOM LAWLER, CLERK

Prepared By:
Dana Rea

Quicken Loans, Inc.
20555 Victor Parkway
Livonia, MI 48152
1-800-226-6308

—————[Space Above This Line For Recording Data]—————

GEORGIA INTANGIBLE TAX PAID
$ 2184.00
TOM LAWLER
SUPERIOR COURT GWINNETT
COUNTY, GEORGIA

# SECURITY DEED

MIN
C#
A#

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 12, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) "Security Instrument" means this document, which is dated    January 12, 2006
together with all Riders to this document.
(B) "Borrower" is Kenneth Washington and Stephanie E. Washington, husband and
wife

Borrower is the grantor under this Security Instrument.
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is
acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the grantee under
this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an
address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

GEORGIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS        Form 3011  1/01

Page 1 of 14        Initials:

VMP MORTGAGE FORMS - (800)521-7291

0011266-8

46

46073
00336

BK46073PG0336

(D) "Lender" is Quicken Loans Inc.

Lender is a Corporation
organized and existing under the laws of                    the State of Michigan
Lender's address is 20555 Victor Parkway, Livonia, MI  48152

(E) "Note" means the promissory note signed by Borrower and dated    January 12, 2006
The Note states that Borrower owes Lender Seven Hundred Twenty Eight Thousand
and 00/100                                                                           Dollars
(U.S. $728,000.00        ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than    February 1, 2036       .
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| ☒ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☒ Other(s) [specify] |
| | | Legal Attached |

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used

Initials: _____

-6A(GA) (0009)                    Page 2 of 14                    Form 3011  1/01

46073
00337

BK46073PG0337

in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

**TRANSFER OF RIGHTS IN THE PROPERTY**

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS, with power of sale, the following described property located in the

County              of              Gwinnett              :
[Type of Recording Jurisdiction]          [Name of Recording Jurisdiction]

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.
SUBJECT TO COVENANTS OF RECORD.

Parcel ID Number                          which currently has the address of
3388 Binghurst Rd                                      [Street]
                    Suwanee          [City] , Georgia 30024    [Zip Code]
("Property Address"):

TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

Initials:

-6A(GA) (0005)          Page 3 of 14          Form 3011  1/01

46073
00338

BK46073PG0338

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

-6A(GA) (0005)                                    Page 4 of 14                                    Form 3011  1/01

46073
00339

BK46073PG0339

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

-6A(GA) (0008)                    Page 5 of 14                    Initials    Form 3011 1/01

46073
00340

BK46073PG0340

...ys of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repair and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

Initials: ____

-6A(GA) (0005)                    Page 6 of 16                    Form 3011  1/01

46073
00341

BK46073PG0341

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property (as set forth below). Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying

GRID-6A(GA) (0005)          Page 7 of 14                    Initials: ___          Form 3011 1/01

46073
00342

BK46073PG0342

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, making repairs, replacing doors and windows, draining water from pipes, and eliminating building or other code violations or dangerous conditions. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.


Initials

46073
00343

BK46073PG0343

(b) ... such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

-6A(GA) (0005)    Page 9 of 14    Initials: [signature]    Form 3011  1/01

46073
00344

BK46073PG0344

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

Initials:

-6A(GA) (0005)                    Page 10 of 14                    Form 3011  1/01

46073
00345

BK46073PG0345

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

Initials:

6A(GA) (0005)                    Page 11 of 14                    Form 3011 1/01

46073
00346

BK46073PG0346

...quires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

Initials

-6A(GA) (0001)                    Page 12 of 14                    Form 3011 1/01

46073
00347

BK4607 3PG0347

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale granted by Borrower and any other remedies permitted by Applicable Law. Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give a copy of a notice of sale by public advertisement for the time and in the manner prescribed by Applicable Law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.

Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by Applicable Law.

If the Property is sold pursuant to this Section 22, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with Applicable Law.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Waiver of Homestead. Borrower waives all rights of homestead exemption in the Property.

25. Assumption Not a Novation. Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

26. Security Deed. This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.



-6A(GA) (0005)                     Page 12 of 14                                      Form 3011  1/01

46073
00348

BK46073PG0348

BORROWER ACCEPTS AND AGREES to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument.

_____ 01/12/2006 (Seal)
Kenneth Washington          -Borrower

_Stephanie E. Washington_ 01/12/2006 (Seal)
Stephanie E. Washington          -Borrower

_____ (Seal)
          -Borrower

_____ (Seal)
          -Borrower

_____ (Seal)
          -Borrower

_____ (Seal)
          -Borrower

_____ (Seal)
          -Borrower

_____ (Seal)
          -Borrower

STATE OF GEORGIA,          Gwinnett          County ss:
Signed, sealed and delivered in the presence of:

_Michael Williams_
Unofficial Witness

_____          County
Notary Public,
State of Georgia

[Notary seal: E. NING CANLAS / MY COMMISSION EXPIRES / FEB 7 2009 / GWINNETT CO., GEORGIA / NOTARY PUBLIC]

-6A(GA) (0006)          Page 14 of 14          Form 3011  1/01

46073
00349

BK46073PG0349

MERS MIN:

# ADJUSTABLE RATE RIDER
**(LIBOR Six-Month Index (As Published in *The Wall Street Journal*) - Rate Caps**
**Accrued Interest Only for Fixed Rate Period)**

THIS ADJUSTABLE RATE RIDER is made this 12th day of    January, 2006 ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to
secure Borrower's Adjustable Rate Note (the "Note") to Quicken Loans Inc.
a Michigan corporation ("Lender") of the same date and covering the property described in the Security
Instrument and located at:

3388 Binghurst Rd
Suwanee, GA 30024
[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST
RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT
BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE
MAXIMUM RATE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial interest rate of    6.250 %. The Note provides for
changes in the interest rate and the monthly payments, as follows:

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
**(A) Change Dates**
The interest rate I will pay may change on the first day of February    2013 , and
on that day every 6th month thereafter. Each date on which my interest rate could change is called a
"Change Date."

Page 1 of 4



46073
00350

BK 46073 PG 0350

**(B) The Index**
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**
Before each Change Date, the Note Holder will calculate my new interest rate by adding Two and One-Quarter percentage points ( 2.250 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**
The interest rate I am required to pay at the first Change Date will not be greater than 11.250 % or less than 2.250 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than One and No-Thousandths percentage points ( 1.000%) from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than 11.250 %.

**(E) Effective Date of Changes**
My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

Page 2 of 4



46073
00351

BK46073PG0351

**(F) Notice of Changes**
The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**
Uniform Covenant 18 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Page 3 of 4



46073
00352

BK 46073 PG 0352

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this
Adjustable Rate Rider.

_____  01/12/2006   _____  01/12/2006
Kenneth Washington            Borrower    Stephanie E. Washington      Borrower

_____  Borrower   _____  Borrower

_____  Borrower   _____  Borrower

_____  Borrower   _____  Borrower

Page 4 of 4

46073
00353

BK46073PG0353

## Exhibit A - LEGAL DESCRIPTION

Deal Number:    1'                              Title Number:    1

Tax ID Number:        . . . —

Land situated in the County of Gwinnett, State of Georgia is described as follows:

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 312, 7TH DISTRICT GWINNETT
COUNTY, GEORGIA, BEING LOT 541, UNIT V, PHASE II, EDINBURGH, AS PER PLAT RECORDED IN PLAT BOOK
83, PAGE 156, GWINNETT COUNTY RECORDS, WHICH PLAT IS HEREBY REFERRED TO AND MADE A PART OF
THIS DESCRIPTION BY REFERENCE.

Commonly known as: 3388 Binghurst Road, Suwanee, GA  30024

BK 5 2 1 1 2 PG 0 6 6 4

FILED & RECORDED
CLERK SUPERIOR COURT
GWINNETT COUNTY, GA.

13 MAR 28 AM 8 00

RICHARD ALEXANDER, CLERK

Recording Requested By: BAYVIEW LOAN SERVICING, LLC
When R                          MONA CAREAGA, BAYVIEW LOAN SERVICING, LLC 4425 PONCE DE LEON
BLVD Suite 500, CORAL GABLES, FL 33146

## CORPORATE ASSIGNMENT OF SECURITY DEED

Gwinnett, Georgia
SELLER'S SERVICE

MERS #

Date of Assignment: March 6th, 2013
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR QUICKEN LOANS,
INC., ITS SUCCESSORS AND ASSIGNS at P.O. BOX 2026, FLINT, MI 48501-2026
Assignee: BAYVIEW LOAN SERVICING, LLC A DELAWARE LIMITED LIABILITY COMPANY at 4425 PONCE DE
LEON BLVD., 5TH FLOOR, CORAL GABLES, FL 33146

Executed By: KENNETH WASHINGTON AND STEPHANIE E. WASHINGTON, HUSBAND AND WIFE To:
QUICKEN LOANS INC.
Date of Security Deed: 01/12/2006 Recorded: 01/20/2006 in Book/Reel/Liber: 46073 Page/Folio: 0335 as
Instrument No.: N/A in the County of Gwinnett, State of Georgia.

Property Address: 3388 BINGHURST ROAD, SUWANEE, GA 30024

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of
which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said
Mortgage having an original principal sum of $728,000.00 with interest, secured thereby, with all moneys now owing
or that may hereafter become due or owing in respect thereof, and the full benefit of all the powers and of all the
covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee,
the Assignor's beneficial interest under the Mortgage.

TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the
terms contained in said Mortgage.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR QUICKEN LOANS, INC., ITS
SUCCESSORS AND ASSIGNS
On March 6th, 2013

By: _____
ROBERT G HALL, Assistant Secretary

WITNESS                                          WITNESS
_____                 _____
_____                 Melba Castrillon

STATE OF Florida
COUNTY OF Miami-Dade

On March 6th, 2013, before me, ADELINE QUINTERO, a Notary Public in and for Miami-Dade in the State of
Florida, personally appeared ROBERT G HALL, Assistant Secretary, personally known to me (or proved to me on
the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by
his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted,
executed the instrument.

WITNESS my hand and official seal,

_____
ADELINE QUINTERO
Notary Expires: 09/03/2016 #EE831859    0033570

ADELINE QUINTERO
NOTARY PUBLIC
STATE OF FLORIDA
Comm# EE831859
Expires 9/3/2016

(This area for notarial seal)

Type: DEED    Book: 55333    Page: 00664

BK55333 PG0664

FILED AND RECORDED
CLERK SUPERIOR COURT
GWINNETT COUNTY GA

17 AUG 17 PM 2 00

RICHARD ALEXANDER, CLERK

Recording Requested By:
When Recorded Return To: CHIEF LEGAL OFFICER, CERBERUS INVESTMENT CORPORATION, 820
MADISON AVENUE, 32ND FLOOR, NEW YORK, NY, 10022

## CORPORATE ASSIGNMENT OF MORTGAGE / SECURITY DEED

Loan:        # #: (
GA/GWINNETT

Assignment Prepared on: February 03, 2017

**ASSIGNOR:BAYVIEW LOAN SERVICING, LLC,** at 4425 PONCE DE LEON BLVD, 5TH FLOOR, CORAL
GABLES, FL, 33146

**ASSIGNEE:BOF II 2011-3NPL, LLC,** at 4425 PONCE DE LEON BLVD, 5TH FLOOR, CORAL GABLES, FL,
33146

For value received, the Assignor does hereby grant, sell, assign, transfer and convey, unto the above-named
Assignee all interest under that certain Mortgage/Security Deed Dated 1/12/2008, in the amount of $728,000.00,
executed by KENNETH WASHINGTON AND STEPHANIE E. WASHINGTON, HUSBAND AND WIFE to
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC AS NOMINEE FOR QUICKEN LOANS INC. ITS
SUCCESSORS AND/OR ASSIGNS and Recorded: 1/20/2008, Book 46073, Page 0335 in GWINNETT County,
State of Georgia

TO HAVE AND TO HOLD, the same unto Assignee, its successors and assigns, forever, subject only to the terms
and conditions of the above-described Mortgage / Security Deed

BAYVIEW LOAN SERVICING, LLC

On 2/7/17

Signature
Name    LEONARDO NUNEZ
Title    ASSISTANT VICE PRESIDENT

Signature
Witness    Maria Gonzalez

Signature
Name.    Peter L. Suarez
Title    Asst. Vice President

Notary Witness

State of    Florida
County of    Miami-Dade

Subscribed and sworn to before me on this    7    day of    Feb    , in the year    2017    by
Leonardo Nunez

WITNESS my hand and official seal.    Shayla L. Jenkins
                                        #FF130771

Notary Expires 9-19-18    /# #

SHAYLA L. JENKINS
MY COMMISSION # FF 130771
EXPIRES September 19, 2018

GA/GWINNETT

... ... n To:
> - SAR

0076660

BK55333 PG0665

FILED AND RECORDED
CLERK SUPERIOR COURT
GWINNETT COUNTY GA.

17 AUG 17 PM 2: 00

RICHARD ALEXANDER. CLERK

Recording Requested By:
When Recorded Return To: CHIEF LEGAL OFFICER, CHIMERA INVESTMENT CORPORATION, 520
MADISON AVENUE, 32ND FLOOR, NEW YORK , NY, 10022

## CORPORATE ASSIGNMENT OF MORTGAGE / SECURITY DEED

Assignment Prepared on February 03, 2017

**ASSIGNOR:** BOF II 2011-2NPL, LLC, at 4425 PONCE DE LEON BLVD, 6TH FLOOR, CORAL GABLES, FL, 33146

**ASSIGNEE:** CHIMERA FUNDING TRS LLC , at 520 MADISON AVENUE, 32ND FLOOR, NEW YORK, NY, 10022

For value received, the Assignor does hereby grant, sell, assign, transfer and convey, unto the above-named Assignee all interest under that certain Mortgage/Security Deed Dated 1/12/2006, in the amount of $728,000.00, executed by KENNETH WASHINGTON AND STEPHANIE E. WASHINGTON, HUSBAND AND WIFE to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC AS NOMINEE FOR QUICKEN LOANS INC ITS SUCCESSORS AND/OR ASSIGNS and Recorded 1/20/2006, Book 46073, Page 0335 in GWINNETT County, State of Georgia.

TO HAVE AND TO HOLD, the same unto Assignee, its successors and assigns, forever, subject only to the terms and conditions of the above-described Mortgage / Security Deed.

BOF II 2011-2NPL, LLC

On 2/7/17

Signature
Name: LEONARDO NUNEZ
Title: ASSISTANT VICE PRESIDENT

Signature
Witness: Maria Gonzalez

Signature
Name:
Title: Peter L. Suarez
Asst. Vice President

Notary Witness
State of Florida
County of Miami-Dade

Subscribed and sworn to before me on this 7 day of Feb , in the year 2-17 by
Leonardo Nunez

WITNESS my hand and official seal. #FF130771
Shayla L Jenkins

Notary Expires 9-19-18 /#. #

SHAYLA L. JENKINS
MY COMMISSION # FF 130771
EXPIRES September 19, 2018

GA/GWINNETT

007666

BK55776 PG0251

FILED & RECORDED
CLERK SUPERIOR COURT
GWINNETT COUNTY. GA.

18 MAR 26  AM 8: 00

RICHARD ALEXANDER. CLERK

**GEORGIA**

COUNTY OF **GWINNETT**

LOAN NO.: (

PREPARED BY: **SELECT PORTFOLIO SERVICING, INC.**

WHEN RECORDED MAIL TO: ATTN: _____          , FIRST AMERICAN MORTGAGE SOLUTIONS, 1795
INTERNATIONAL WAY, IDAHO FALLS, ID 83402, PH.

# CORPORATE ASSIGNMENT

FOR VALUE RECEIVED, **CHIMERA FUNDING TRS LLC, BY SELECT PORTFOLIO SERVICING, INC. AS ATTORNEY IN FACT**, located at **3217 S. DECKER LAKE DR., SALT LAKE CITY, UT 84119**, Assignor, does this day transfer, assign, convey, and deliver unto **CIM TRUST 2017-2, MORTGAGE-BACKED NOTES, SERIES 2017-2, AMONG SELECT PORTFOLIO SERVICING, INC., AS SERVICER, CIM TRUST 2017-2, AS ISSUER, AND U.S. BANK NATIONAL ASSOCIATION, AS INDENTURE TRUSTEE,** located at C/O SELECT PORTFOLIO SERVICING, INC. 3217 S. DECKER LAKE DR., SALT LAKE CITY, UT 84119, Assignee, its successors, representatives, and assigns, all of Assignor's right, title, and interest in and to that certain Security Deed in the principal sum of $728,000.00, dated **JANUARY 12, 2006**, executed by **KENNETH WASHINGTON AND STEPHANIE E. WASHINGTON, HUSBAND AND WIFE**, Original Grantor, to **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS NOMINEE FOR QUICKEN LOANS INC., ITS SUCCESSORS AND ASSIGNS**, Original Grantee, and filed for record and recorded on JANUARY 20, 2006 in Deed Book 46073 at Page 0335 in the Office of the Clerk of the Superior Court in the County of **GWINNETT**, State of **GEORGIA**.

**AS DESCRIBED IN SAID SECURITY DEED**

The Assignor herein specifically transfers, conveys and assigns to the above Assignee, its successors, representatives, and assigns the aforesaid Deed of Trust, the property described therein, together with all the powers, options, rights, privileges, and immunities contained therein on the undersigned.

IN WITNESS WHEREOF, the undersigned has caused this Instrument to be executed this _____ MAR 0 1 2018 _____.

**CHIMERA FUNDING TRS LLC, BY SELECT PORTFOLIO SERVICING, INC. AS ATTORNEY IN FACT**

Name: Sandi Widdowson
Title: Sandi Widdowson
Doc Control Officer

STATE OF UTAH                    COUNTY OF SALT LAKE        ) ss.

SIGNED, SEALED, AND DELIVERED in the presence of the below named Notary Public, as an official witness and below named unofficial witness, on ___ MAR 0 1 2018 ___, by ___ Sandi Widdowson ___, DOC CONTROL OFFICER, of CHIMERA FUNDING TRS LLC, BY SELECT PORTFOLIO SERVICING, INC. AS ATTORNEY IN FACT:

Notary Public/Official Witness:                    Unofficial Witness:

LISA FISH                                          Nancy L. BenIncosa, Witness
(COMMISSION EXP. ___ JUL 1 3 2021 ___)
NOTARY PUBLIC

LISA FISH
Notary Public State of Utah
My Commission Expires on:
July 13, 2021
Comm. Number: 695961

0026971

Page 1 of 1

7

Record & Return To:
GMAC Mortgage, LLC,
Attention: Loss Mitigation
3451 Hammond Avenue
Waterloo, IA 50702

————————————[Space Above This Line For Recorder's Use]————————————

# INTEREST ONLY STEP RATE LOAN MODIFICATION AGREEMENT
# WITH TERM EXTENSION

This Loan Modification Agreement ("Agreement") made this April 1, 2010 ("Effective Date") between KENNETH WASHINGTON            ("Borrower") and GMAC Mortgage, LLC the Lender\Servicer or agent for Lender\Servicer ("Lender"), amends and supplements that certain promissory note ("Note") dated January 12, 2006 in the original principal sum of Seven Hundred Twenty Eight Thousand Dollars and No Cents ($ 728,000.00) executed by Borrower. The Note is secured by a Mortgage, Deed of Trust, or Deed to Secure Debt (the "Security Instrument"), dated the same date as the Note, and if applicable, recorded on with Instrument Number  in Book  and/or Page Number  of the real property records of GWINNETT County, GA. Said Security Instrument covers the real and personal property described in such Security Instrument (the "Property") located at 3388 BINGHURST RD   SUWANEE GA 30024, which real property is more particularly described as follows:

### (Legal Description if Applicable for Recoding Only)

Borrower acknowledges that "Lender" is the legal holder and the owner, or agent\servicer for the legal holder and owner, of the Note and Security Instrument and further acknowledges that if "Lender" transfers the Note, as amended by this Agreement, the transferee shall be the "Lender" as defined in this Agreement.

Borrower has requested, and "Lender"/ has agreed to extend or rearrange the time and manner of payment of the Note and to extend and carry forward the lien(s) on the Property created by the Security Instrument.

Now, therefore, in consideration of the mutual promises and agreements contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. Borrower acknowledges that as of the Effective Date, the amount payable under the Note and Security Instrument (New Principal Balance) is $ 744,807.55 which shall be paid in full on or before the Extended Term of my loan expires (the "New Maturity Date), or when I payoff my loan at the time when I sell or transfer any interest in my home, refinance the loan, or when the last scheduled payment is due, and the Lender will be under no obligation to refinance my loan.

2. Borrower hereby renews and extends such indebtedness and promises to pay jointly and severally to the order of "Lender" the Principal Balance, consisting of the amount(s) loaned to Borrower by "Lender" and any accrued but unpaid interest capitalized to date as applicable, along with any other amounts that may come due under the terms of the original Note and security Instrument.

3. Interest will be charged on the non-deferred principal balance until the full amount of that principal has been paid. Borrower promises to make a payment every month. This monthly payment will consist of interest only starting on May 1, 2010 and ending on April 1, 2020. The initial Interest Only payment

GMAC IOST3 03-16-2010 master mail merge Record N.doc

will be 2,249.94 at the initial rate of 3.62500; after which that rate will be increased by 1.00% per annum every 12 months thereafter as follows. The payment amount will adjust with each rate adjustment or principal curtailment received.

| Interest Rate | From | Through |
|---|---|---|
| 3.62500% | April 1, 2010 | April 1, 2014 |
| 4.62500%. | April 1, 2014 | April 1, 2015 |
| 5.00000% | April 1, 2015 | April 1, 2050 |

4. Beginning on May 1, 2020 and continuing thereafter until all principal is paid in full, interest will be charged at the rate of 5.00000 per year and Borrower will make payments consisting of principal and interest for the remaining term of the loan in an amount sufficient to repay the loan in full by the "New Maturity Date". The date of the borrower's first payment consisting of both principal and interest shall be May 1, 2020. Borrower will make these payments every month until all of the principal and interest and any other charges that Borrower may owe under this Agreement have been repaid. Each monthly payment will be applied as of its scheduled due date, and it will be applied to interest before principal. The amounts indicated in this paragraph do not include any required escrow payments for items such as hazard insurance or property taxes; if such escrow payments are required the monthly payments will be higher and may change as the amounts required for escrow items change.

5. If on April 1, 2050 (the "New Maturity Date"), Borrower still owes any amounts under the Note and Security Instrument, or any other amounts as otherwise provided for in this Agreement, Borrower will pay these amounts in full on that date. Borrower will make such payments at 3451 Hammond Avenue, Waterloo, IA 50702 or at such other place as Lender may require.

6. If "Lender" has not received the full amount of any monthly payment within the grace period provided for in the original Note or as otherwise provided for by law, Borrower will pay a late payment fee to "Lender" in an amount calculated based on the late charge percentage provided for in the original Note, or as otherwise provided for by law, and the monthly payment required under this Agreement, with a maximum as provided for in the Note, or otherwise provided by law. Borrower will pay this late charge promptly but only once on each late payment. The late charge is not in lieu of any other remedy of "Lender", including any default remedy.

7. It is the intention of the parties that all liens and security interests described in the Security Instrument are hereby renewed and extended (if the Maturity Date of the original Note has been extended) until the indebtedness evidenced by the Note and this Agreement has been paid-in-full. "Lender" and Borrower acknowledge and agree that such renewal, amendment, modification, rearrangement or extension (if applicable) shall in no manner affect or impair the Note or liens and security interests securing same, the purpose of this Agreement being simply to modify, amend rearrange or extend (if applicable) the time and the manner of payment of the Note and indebtedness evidenced thereby, and to carry forward all liens and security interests securing the Note, which are expressly acknowledged by Borrower to be valid and subsisting, and in full force and effect so as to fully secure the payment of the Note.

8. If all or any part of the Property or any interest in it is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without "Lender's" prior written consent, "Lender" may, at its option, require immediate payment in full of all sums secured by the Security Instrument. However, this option shall not be exercised by "Lender" if prohibited by applicable law. In addition, if "Lender" exercises this option, "Lender" shall give Borrower all notice(s) that may be required by law before accelerating the debt after which, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the

date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument. For purposes of this paragraph, "interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is transfer of title by Borrower at a future date to a purchaser.

9.    As amended hereby, the provisions of the Note and Security Instrument shall continue in full force and effect, and the Borrower acknowledges and reaffirms Borrower's liability to "Lender" thereunder. In the event of any inconsistency between this Agreement and the terms of the Note and Security Instrument, this Agreement shall govern. Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument. Except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and Borrower and "Lender" will be bound by, and comply with, all of the terms and provisions thereof, as amended by this Agreement, including but not limited to, in the case of the Borrower, the obligation to pay items such as taxes, insurance premiums or escrow items, as applicable. Any default by Borrower in the performance of its obligations herein contained shall constitute a default under the Note and Security Instrument, and shall allow "Lender" to exercise all of its remedies set forth in said Security Instrument.

10.    "Lender" does not, by its execution of this Agreement, waive any rights it may have against any person not a party hereto. This Agreement may be executed in multiple counterparts, each of which shall constitute an original instrument, but all of which shall constitute one and the same Agreement.

EACH OF THE BORROWER AND THE "LENDER" ACKNOWLEDGE THAT NO REPRESENTATIONS, AGREEMENTS OR PROMISES WERE MADE BY THE OTHER PARTY OR ANY OF ITS REPRESENTATIVES OTHER THAN THOSE REPRESENTATIONS, AGREEMENTS OR PROMISES SPECIFICALLY CONTAINED HEREIN. THIS AGREEMENT, AND THE NOTE AND SECURITY INSTRUMENT (AS AMENDED HEREBY) SETS FORTH THE ENTIRE UNDERSTANDING BETWEEN THE PARTIES. THERE ARE NO UNWRITTEN AGREEMENTS BETWEEN THE PARTIES.

Executed effective as of the day and year first above written.

3/16/2010
Date          KENNETH WASHINGTON

Witness

Ron T Brooks
Print

_____          _____
Date

_____

_____          _____
Date                                     Witness

_____

Print

_____          _____
Date

_____

GMAC Mortgage, LLC

By: _____
Limited Signing Officer
Krisit M. Caya

Date: _____
Limited Signing Officer

**SPS** SELECT Portfolio SERVICING, inc.

**Financial Breakdown Statement**
Data date:01/28/2021 11:22:03AM
Loan Numbe

## Financial Breakdown Summary

| Borrower / Loan Information | | | | | |
|---|---|---|---|---|---|
| Loan Number: | | Loan Status: | BK7 | Interest Type: | VAR |
| Borrower: | WASHINGTON, KENNETH | Due Date: | 12/20/2020 | Modified Date: | 04/01/2010 |
| Co-Borrower: | - | MI Coverage: | No | Restricted Escrow | $0.00 |
| Address: | 3388 BINGHURST RD | Acquisition Date: | 02/24/2017 | BK Case #: | 20-72869 |
| City: | SUWANEE | Maturity Date: | 04/01/2050 | BK Chapter: | 07 |
| State: | GA | Stop Adv date: | MM/DD/YYYY | BK Filing Date: | 12/22/2020 |
| County: | Gwinnett | Last Payment Date: | 12/04/2020 | Prepared Date: | 01/28/2021 |

| Financial Information | | | |
|---|---|---|---|
| Unpaid Principal Balance | | | $752,585.40 |
| | Principal Balance | $741,439.60 | |
| | Deferred Balance | $11,145.80 | |
| Accrued Interest | | | $6,985.31 |
| | Interest From Date | 11/20/2020 | |
| | Good-thru Date | 01/28/2021 | |
| | Interest Rate | 5.00000% | |
| | Per Diem Rate | $101.31 | |
| Escrow Advance Balance | | | $1,504.24 |
| | Taxes | $1,504.24 | |
| | Insurance | $0.00 | |
| | Escrow Refund/Disbursement | $0.00 | |
| | Mortgage Insurance | $0.00 | |
| MIP / PMI | | | $0.00 |
| Advance Balance | | | $0.00 |
| | Valuations | $0.00 | |
| | Preservation | $0.00 | |
| | Inspections | $0.00 | |
| | Postage | $0.00 | |
| | Misc. | $0.00 | |
| Late Charges | | | $30.53 |
| NSF Fees | | | $0.00 |
| Fax Fees | | | $0.00 |
| Payoff Fees | | | $0.00 |
| Interest on Advance | | | $0.00 |
| Misc. | | | $0.00 |
| Unapplied Funds | | | $0.00 |
| Total without Attorney fees | | | $761,105.48 |
| Advance Balance - Excluded | | | $0.00 |
| | FC Fees | $0.00 | |
| | FC Costs | $0.00 | |
| | BK Fees | $0.00 | |
| | BK Costs | $0.00 | |
| Total with Attorney fees | | | $761,105.48 |

| Foreclosure Name |
|---|
| U.S. Bank National Association, not in its individual capacity but solely as indenture trustee, for the holders of the CIM Trust 2020-R3, Mortgage-Backed Notes, Series 2020-R3 |